UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CRIMINAL ACTION NO. 3:21-CR-00006-GFVT-EBA

UNITED STATES OF AMERICA,                                                              PLAINTIFF,

V.                              **REPORT AND RECOMMENDATION**

JOHN P. GOBLE, *et al.*,                                                                      DEFENDANTS.

\*\*\* \*\*\* \*\*\* \*\*\*

## I. INTRODUCTION & FACTUAL BACKGROUND

John P. Goble and Michael P. Crawford were indicted by a grand jury on March 18, 2021 on two counts of defrauding the United States under 18 U.S.C. § 371. [R. 1 pg. 2–5]. The charges involve the theft and transport of Kentucky State Police (KSP)-owned ammunition (Count 1) and the theft and transport of KSP-owned firearms (Count 2).

Defendants contend the indictment is multiplicitous because Counts 1 and 2 recite near-identical charges of conspiracy to violate 18 U.S.C. § 666(a)(1)(A) and is thus violative of the Fifth Amendment and the Double Jeopardy Clause.[1] [R. 49-1, 51 The United States maintains that the motions are premature, and that an assessment of double jeopardy would be properly made after trial, in the event Defendants are actually convicted on both Counts of the indictment. [R. 52 at pg. 4]. In the alternative, if the Court finds that the motion is ripe for review, the United States

---

[1] Goble's motion identified the issue as one of "duplicity" rather than "multiplicity." [R. 51]. However, an indictment is only duplicitous "if it sets forth separate and distinct crimes in *one* count." *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002) (emphasis added). The motion, however, did not advance any argument of duplicity. In his Reply, Goble uses the terms multiplicity and duplicity interchangeably while only advancing an argument of multiplicity. [R. 55]. The Court will, thus, only address the issue of multiplicity as to Crawford and Goble's motions to dismiss the indictment.

requests an evidentiary hearing to develop a factual record. [R. 52 at pg. 8–9].

## II. ANALYSIS

### A. Motion to Dismiss Indictment as Multiplicitous

The Defendants move to dismiss the indictment in this action as being impermissibly multiplicitous, in that it charges the same alleged conspiracy as two separate offenses. [R. 49, 51]. Multiplicity involves the charging of a single offense in more than one count of an indictment, *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008) (citing *United States v. Lemons*, 941 F.2d 309, 317 (5th Cir. 1991)), and may implicate the Double Jeopardy Clause when a multiplicitous indictment leads to the defendant being punished for the same crime twice or suggests to the trier of fact that the defendant committed more than one crime. *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008) (citing *United States v. Brandon*, 17 F.3d 409 (1st Cir. 1994); *United States v. Dixon*, 921 F.2d 194 (8th Cir. 1990)). The Double Jeopardy Clause also prohibits the infliction of "multiple punishments for the same offense imposed in a single proceeding." *Jones v. Harry*, 405 F. App'x 23, 28 (6th Cir. 2010) (quoting *Jones v. Thomas*, 491 U.S. 376, 381 (1989)).

When a double jeopardy claim involves multiple conspiracies, as in this case, courts must examine whether the conspiracies charged are, in fact, separate. For the purposes of this examination, the agreement is the "nucleus of the offense." *United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1983). "A single agreement to commit several crimes constitutes one conspiracy. By the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies." *United States v. Broce*, 488 U.S. 563, 570–71 (1989).

Germane to Defendants' motions are Counts 1 and 2 of the instant indictment, both of which allege Goble and Crawford conspired (along with an unindicted co-conspirator, Mitch Harris) to violate 18 U.S.C. § 371. However, the overt acts underlying each alleged conspiracy

differ in that Count 1 concerns a conspiracy to misappropriate "various calibers and gauges of ammunition," [R. 1 at pg. 3], while Count 2 concerns a conspiracy to misappropriate rifles and shotguns, [*Id.* at pg. 5]. In addition, while the time periods of the conspiracies overlap, the indictment does not allege that each conspiracy occurred over an identical period. Apart from the differing time periods and indictment's distinction between ammunition and weapons, each Count alleges that the respective conspiracies involved the same parties (Goble, Crawford, Harris) and that the conspiracies occurred in the same geographic location (Scott, Franklin, Anderson, and Shelby Counties). [R. 1].

Defendants contend that the similarities between Count 1 and Count 2 amount to multiplicity and, therefore, the indictment should be dismissed or, alternatively, that the Court should direct the United States to elect a conspiracy to prosecute. Either remedy would be proper if the Defendants were, in fact, charged with committing a single offense in more than one count of an indictment. *See Swafford*, 512 F.3d at 644. To determine whether two conspiracies actually constitute a single conspiracy (and, thus, a single offense in multiple counts of the indictment), the Sixth Circuit has developed a "totality of circumstances" test which examines five factors to determine whether a defendant "engaged in one overarching conspiracy or separate conspiracies." *United States v. Kennedy*, 743 Fed. App'x 649, 653 (6th Cir. 2018). The factors include:

> 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place.

*United States v. Sinito*, 723 F.2d at 1256.

The defendant bears the burden to demonstrate that a single conspiracy exists. *In re Grand Jury Proceedings*, 797 F.2d 1377, 1380 (6th Cir. 1986). A defendant's burden is satisfied by advancing a nonfrivolous or prima facie showing of a single conspiracy. *Id.* (citing *United States*

*v. Jabara*, 644 F.2d 574, 576–77 (6th Cir. 1981).  Making a prima facie claim "requires more than a showing of mere possibility; it means that if no rebuttal evidence is submitted, the proponent has met his burden of proof and is entitled to prevail." *Air Line Pilots Ass'n, Int'l v. DOT*, 880 F.2d 491 (1989); *see generally*, *Prima Facie Case*, Black's Law Dictionary (11th ed. 2019) (defining prima facie case as "[t]he establishment of a legally required rebuttable presumption.").  Once the defendant makes his prima facie claim, the burden shifts to the government to show by a preponderance of the evidence that the conspiracies are, in fact, separate.  *United States v. Vichitvongsa*, 819 F.3d 260, 273 (6th Cir. 2016) (citing *In re Grand Jury Proceedings*, 797 F.2d at 1380).  This requires the United States, during a a pretrial proceeding, to develop the record in the event of an interlocutory appeal.  *Jabara*, 644 F.2d at 576 (The denial of a motion to dismiss an indictment on double jeopardy grounds is immediately appealable. As a consequence, after the Defendant makes a prima facie claim, there must be a pretrial proceeding to allow the United States the opportunity to show by a preponderance of the evidence that the conspiracies are, in fact, separate.).

Therefore, the Court considers the following in order to determine whether Defendants have made a prima facie showing that a single conspiracy exists.

**1. Time**

Regarding the first factor, time, the Defendants contend that the acts underlying Counts 1 and 2 of the indictment took place during the same period, from 2014 to early 2017. [R. 49-1 at pg. 5]. As the indictment is written, this is clearly not the case. Count 1 alleges that the conspiracy to misappropriate ammunition occurred "[f]rom on or about a date in late 2014, and continuing on or about a date in early 2018," [R. 1 at pg. 2], while Count 2 alleges the conspiracy to misappropriate firearms occurred "[f]rom on or about a date in late 2016, and continuing until on or about a date in early 2017," [*Id.* at pg. 4].  Further, the United States proffers that its theory is

that two agreements occurred at two distinct times: first, the Defendants and the unindicted co-conspirator agreed to misappropriate ammunition in the possession of KSP; and, several years after the initial agreement, the Defendants and their unindicted co-conspirator agreed to the misappropriation of weapons in the possession of KSP. [R. 52 at pg. 7]. Other than Crawford's objection to the government splitting up the conspiracies because they overlap, [R. 49-1 at pg 5], neither Defendant makes a prima facie showing that each alleged conspiracy took place during the same time period.

### 2. Persons Involved in Conspiracy

The second factor examines the persons acting as co-conspirators. According to the indictment and the parties' briefing on this matter, it is undisputed the persons involved in the alleged conspiracy are the same: Defendants Goble and Crawford, along with Mitch Harris, the unindicted co-conspirator. It is well-established that "two distinct conspiracies can be found 'even though they may involve some of the same participants[.]'" *United States v. Goff*, 400 F. App'x 1, 9 (6th Cir. 2010) (quoting *Sinito*, 723 F.2d at 1257). Nonetheless, both Defendants have made a prima facie showing that each Count of the indictment involves the same set of co-conspirators.

### 3. Statutory Offense Charged in Indictment

Here, the Court notes that Defendants are charged with the same statutory violation in both Count 1 and Count 2. While each Count alleges a conspiracy pursuant to 18 U.S.C. § 371, and that each Defendant conspired to violate 18 U.S.C. §666(a)(1)(a), it should be noted that Count 1 specifically refers to KSP-owned ammunition, while Count 2 refers to KSP-owned firearms. Although "one can certainly enter two conspiracies to commit the same type of crime," *United States v. Wheeler*, 535 F.3d 446, 456 (6th Cir. 2008) (quoting *United States v. Ledon*, 49 F.3d 457, 460 (8th Cir. 1995)), the Defendants need only make a prima facie showing that both Counts of the indictment allege violations of the same statutory offense. Here, the Defendants have made

the necessary showing that Counts 1 and 2 of the indictment allege violations of the same statutory offense.

### 4. Overt Acts Charged by the United States

The fourth factor is the "most significant" when determining whether there is one agreement and, in turn, a single conspiracy. *Id.* at 450. In addition to examining the overt acts, the Court also is charged with examining the nature and scope of the activity of each alleged conspiracy. *See United States v. Kennedy*, 743 Fed. App'x 649, 653 (6th Cir. 2018) (finding multiple conspiracies when the activity in one conspiracy was "far more expansive in scope"); *see also*, *United States v. Frazier*, No. 3:17-cr-00130, 2019 U.S. Dist. LEXIS 152266, at *33 (M.D. Tenn. Sep. 6, 2019) (finding multiple conspiracies by examining the language of the indictment and the nature and scope of activity); *United States v. Prater*, No. 3:19-CR-151-TAV-DCP-7, 2020 U.S. Dist. LEXIS 248187, at *13 (E.D. Tenn. Dec. 21, 2020) (examining nature and scope of activity when government did not identify overt acts for one alleged drug conspiracy). Defendants contend that, because the misappropriated property underlying each Count was all property of KSP, the United States has carved two conspiracies from a single alleged theft of firearm property. [R. 49-1 at pg. 5]. Apart from conclusory statements by Crawford that there was a single agreement and, therefore, a single conspiracy, [R. 49-1 at pg. 5; R. 54 at pg. 3], neither defendant adequately argues that the acts contained within each Count are fundamentally the same.

As written, Counts 1 and 2 of the indictment describe entirely different overt acts committed by the Defendants. Count 1, for instance, alleges:

> (a) Crawford asked Harris "to give him various calibers and gauges of ammunition" and directed Harris to place the ammunition in his vehicle;
> 
> (b) Goble called Harris "to discuss the availability of ammunition";
> 
> (c) Goble picked up ammunition at Harris's home or other locations, and "stored

>   the ammunition in the basement of his office in Georgetown, Kentucky";
>
>   (d) Crawford "stored the stolen ammunition" in Goble's office basement; and
>
>   (e) On or about December 2017, Goble asked one of his employees to "transport the ammunition stored in his office basement to a residence in Georgetown, Kentucky."

[R. 1 at pg. 3–4]. In contrast, the overt acts enumerated in Count 2 vary greatly, alleging:

>   (a) Harris "prepared KSP paperwork purporting to assign KSP-owned firearms to state troopers";
>
>   (b) Goble and Crawford "inspected rifles and shotguns that were to be surplused and sold by the KSP and selected ones to purchase";
>
>   (c) Goble and Crawford met Harris to pick up firearms from Harris;
>
>   (d) Goble and Crawford gave cash to Harris to pay him for selling the firearms; and
>
>   (e) Goble and Crawford sold some of those firearms to other persons.

[*Id.* at pg. 4–5]. By solely reading the overt acts enumerated by the indictment, it is easily ascertained that each Count constitutes separate chains of events leading to the violation of the same statute. This does not mean that Defendants have been charged with a single offense in more than one count of the indictment, as prohibited by FED. R. CRIM P. 12(b)(3)(ii). *See Swafford*, 512 F.3d at 844. Neither defendant advances a colorable claim that Counts 1 and 2 of the indictment are the same in nature and scope.

>   **5. Places Where Alleged Events Took Place**

Finally, the fifth factor examines the places where the events alleged as part of the conspiracy took place. Here, the indictment specifies Counts 1 and 2 took place in Scott, Franklin, and Shelby Counties in the Eastern District of Kentucky. Accordingly, Defendants have made a prima facie showing as to this factor.

In sum, the Court finds the Defendants have failed to make a colorable claim on all five *Sinito* factors such they have established a prima facie case of multiplicity. Accordingly, the burden to show multiple conspiracy does not shift to the United States and the Court need not hold an evidentiary hearing to further establish a factual record. Even assuming, *arguendo*, that a

colorable claim was made, "[t]he Supreme Court has instructed that the proper remedy for multiplicitous counts may include allowing the jury to consider all counts that are reasonably supported by the evidence and addressing any multiple-punishment issues at sentencing by merging overlapping convictions." *United States v. McCafferty*, 482 F. App'x 117, 126 (6th Cir. 2012) (citing *Ball v. United States*, 470 U.S. 856, 864–65 (1985)).

### B. Double Jeopardy

The Fifth Amendment prohibition against double jeopardy safeguards defendants from three fundamental harms: (1) being prosecuted after an initial acquittal; (2) being prosecuted after an initial conviction; and (3) receiving multiple punishments for the same offense. *United States v. Davis*, 306 F.3d 398, 417 (6th Cir. 2002) (citing *United States v. Gibbons*, 994 F.2d 299, 301 (6th Cir. 1994)). In essence, it protects the Defendants from multiple prosecutions for the same offenses, and from multiple punishments for the same offenses. Importantly, jeopardy does not attach until a second prosecution is underway or until multiple punishments have been administered for the same offense. *United States v. Turner*, 324 F.3d 456, 461 (6th Cir. 2003) (citation omitted). The Supreme Court clarified that "[u]ntil a jury is empaneled and sworn or, in a bench trial, until the first witness is sworn, jeopardy does not attach." *Willhauck v. Flanagan*, 448 U.S. 1323, 1325–26 (1980) (citations omitted).

The Court must consider whether Defendants have made a nonfrivolous, prima facie claim of double jeopardy due to either being subjected to multiple prosecutions for the same offenses or punished multiple times for the same offenses. Based on the record, they have not. At this time, the Defendants have not been subjected to multiple prosecutions and no jeopardy has attached as no jury has been impaneled and no witness has been sworn as to either Goble or Crawford in any prosecution, whether in state or federal court. Moreover, Defendants do not allege they have been previously acquitted or convicted on same or similar charges in any court. To the extent that

Defendants allege double jeopardy, their claims are premature so long as they are not at risk of successive prosecution or receiving multiple punishments for the same offense.

### C. Motions to Dismiss Indictment are Untimely

Finally, the United States raises the issue of timeliness as to the Defendants' motions. *See* [R. 52 at pg. 1 n.2]. The undersigned notes that the Court entered scheduling orders for both Goble and Crawford on April 5, 2021. [R. 16, 20]. Each order provided that defensive motions should be filed within thirty (30) days of the entry of the Scheduling Order, and that an evidentiary hearing would follow in the event any motions were filed which require a hearing. Thus, per the Court's orders, Goble and Crawford should have filed any Rule 12(b)(3) motions no later than May 5, 2021. The instant motions were filed September 30, 2021 and October 1, 2021, [R. 49, 51], thus making them untimely pursuant to Rule 12(c). For the Court to further consider the motions despite their delay, Defendants should have also shown good cause. FED. R. CRIM. P. 12(c)(3); *see also United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015) (discussing responsibility of district court to examine good cause for an untimely filing under Fed. R. Crim. P. 12(c)(3)). Nowhere in their filings do Defendants provide the reason for filing their motions to dismiss the indictment well after the deadline imposed by the Court. Accordingly, the motions should also be denied as untimely.

### IV. RECOMMENDATION

As the Defendants have not made a prima facie, nonfrivolous showing of a double jeopardy violation, the undersigned finds Defendants' double jeopardy claims to be without merit. Having fully considered the matter, and the Court being sufficiently advised,

**IT IS RECOMMENDED** that, Defendants' motions to dismiss the indictment and

motions for an evidentiary hearing [R. 49, 51] be **DENIED.**

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(1).

Signed November 8, 2021.



Signed By:
*Edward B. Atkins*  *EBA*
**United States Magistrate Judge**